IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CHAD JEREMY ADAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | CIV-07-1113-D |
| v. | ) | |
| | ) | |
| MUSTANG POLICE DEPARTMENT, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

REPORT  AND  RECOMMENDATION

Plaintiff, a state prisoner appearing *pro se* and *in forma pauperis*, brings this civil

rights action pursuant to 42 U.S.C. §1983.  In his Complaint filed October 2, 2007, Plaintiff

seeks damages for alleged constitutional deprivations and a violation of the Americans with

Disabilities Act stemming from his encounter in April 2006 with several officers of the City

of Mustang Police Department named as Defendants herein ("MPD Officers") in April 2006,

which resulted in his detention and transport by MPD Officers to Defendant Integris

Canadian Valley Regional Hospital ("Hospital")[1] for mental health treatment, the treatment

he received at the Hospital in April 2006, and criminal charges being filed against Plaintiff

---

[1]This Defendant was identified by Plaintiff as Canadian Valley Hospital.  However, this
Defendant has answered the Complaint and filed a dispositive motion indicating that  the proper
name of this entity is Integris Canadian Valley Regional Hospital.  Therefore, the proper name for
the Defendant has been substituted for the name of the Defendant set forth in the Complaint.

in the District Court of Canadian County, Oklahoma. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B).

Before the undersigned is the Motion to Dismiss filed by Defendants Paul Hesse, an Assistant District Attorney for Canadian County ("ADA Hesse"), and the Canadian County District Attorney's Office ("DA's Office"), to which Plaintiff has responded.  Also before the undersigned is the Motion to Dismiss or in the alternative Motion for Summary Judgment by Defendant Hospital, to which Plaintiff has responded.[2]  For the following reasons, it is recommended that these Defendants' dispositive motions be granted.

I. Plaintiff's Claims

Plaintiff asserts that he is currently incarcerated at the Lawton Correctional Facility.[3] Plaintiff's claims, however, involve his encounter with Defendant MPD Officers in April 2006 in Mustang, Oklahoma.  Public records of which the undersigned takes judicial notice show that Plaintiff was charged in April 2006 in the District Court of Canadian County, Oklahoma, with the felony offense of Assault and Battery with a Dangerous Weapon and the

---

[2]A Motion for Summary Judgment filed by Defendants Crawford, Six, Davis, City of Mustang, Adams, Brown, Collins, and James and a Motion to Dismiss or in the alternative Motion for Summary Judgment filed by Defendant Canadian County are also pending before the undersigned and will be addressed in a separate Supplemental Report and Recommendation.

[3]Public records of the Oklahoma Department of Corrections available on the internet reflect that Plaintiff has a lengthy criminal record, including twelve convictions resulting in incarceration. Plaintiff is presently incarcerated serving a five year term of imprisonment for Assault with a Dangerous Weapon entered in the District Court of Canadian County, Oklahoma, on April 22, 2008. http://doc.state.ok.us (Offender information for Plaintiff accessed August 26, 2008).

misdemeanor offense of Resisting an Officer.  http://www.oscn.net (Docket sheets in State of Oklahoma v. Chad Jeremy Adams, Case Nos. CF-2006-150 and CM-2006-336)(accessed August 26, 2008)).  According to the docket sheet in the felony matter, Case No. CF-2006-150, the charge was amended to Assault with a Dangerous Weapon, and on April 22, 2008, Plaintiff entered a guilty plea to the charge of Assault with a Dangerous Weapon.  According to the docket sheet in the misdemeanor matter, Case No. CM-2006-336, Plaintiff entered a guilty plea on April 22, 2008, to the charge of Resisting an Officer.  Plaintiff was sentenced to a 5-year term of imprisonment for the felony conviction and a one year concurrent sentence for the misdemeanor conviction.

In his Complaint, Plaintiff asserts multiple claims for relief against Defendants under 42 U.S.C. § 1983, including claims of a violation of the Americans with Disabilities Act, Fourth Amendment violations for excessive use of force and unreasonable seizure, a Fourteenth Amendment violation for deliberate indifference to his serious medical needs, and claims of malicious prosecution and conspiracy to cover-up the malicious prosecution and excessive use of force.  As support for these claims, Plaintiff alleges that several MPD Officers responded to a 911 call from an individual on April 4, 2006, to render assistance to Plaintiff at his residence.  Plaintiff asserts that the officers were informed by the 911 caller he had overdosed on his prescription epilepsy medication in an attempt to commit suicide.[4]

---

[4]Plaintiff alleges that "Sgt. Adams responded to 9-1-1 call to plaintiff's residence to render aid and assistance to mentally unstable individual attempting suicide on prescription epileptic medication, after suffering epileptic seizure." Complaint, at 1.  Plaintiff also alleges that the "officers of Mustang Police were fully aware that they were responding to an attempted suicide by overdose

Plaintiff alleges in his Complaint that the MPD Officers entered his residence through two closed doors, entered the bathroom where he was in a bathtub full of water, and used taser guns to forcibly gain his consent for mental health treatment, placed him in metal restraints on his wrists and legs, transported him to Defendant Hospital, and then refused to remove the metal restraints for three days while he was in the intensive care unit of the hospital and experiencing epileptic seizures.

II. Standard of Review

A motion to dismiss may be granted when the plaintiff has "failed to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S.Ct. 1955, 1965 (2007). This review contemplates the assertion of "enough facts to state a claim to relief that is plausible on its face." Id. at 1974. Thus, "when the allegations in a complaint, however true, could not raise a [plausible] claim of entitlement to relief," the cause of action should be dismissed. Id. at 1966. A *pro se* plaintiff's complaint must be broadly construed under this standard. Erickson v. Pardus, __ U.S. __, 127 S.Ct. 2197, 2200 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the generous construction to be given the *pro se* litigant's allegations "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." Hall v. Bellmon, 935 F.2d 1106, 1110

---

of epileptic medication...." Complaint, at 2.

(10th Cir. 1991).  Thus, a reviewing court need not accept "mere conclusions characterizing pleaded facts." Bryson v. City of Edmond, 905 F.2d 1386, 1390 (10th Cir. 1990). See Twombly, 127 S.Ct at 1964-1965 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.")(quotations and citations omitted).  The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." Whitney v. New Mexico, 113 F.3d 1170, 1173-1174 (10th Cir. 1997).   Additionally, a court evaluating a complaint challenged by a Rule 12(b)(6) motion to dismiss may consider the complaint as well as any documents attached to it as exhibits. Hall, 935 F.2d at 1112.

Summary judgment may be granted only where the pleadings and any supporting documentary materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In considering a motion for summary judgment, the court reviews the evidence and inferences drawn from the record in the light most favorable to the nonmoving party.  Jiron v. City of Lakewood, 392 F.3d 410, 414 (10th Cir. 2004).  A dispute is "genuine" if a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "Material facts" are "facts which might affect the outcome of the suit under the governing law."  Id. Additionally, if the moving party demonstrates an absence of evidence regarding an issue on which the nonmoving party will bear the burden of proof at

trial, the nonmoving party can defeat summary judgment only by designating with evidence outside of the pleadings "specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A special report[5] is treated as an affidavit, and the plaintiff's complaint is treated as an affidavit as well if it alleges facts based on the plaintiff's personal knowledge and has been sworn under penalty of perjury. Hall, 935 F.2d at 1111.

Additionally, the Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the plaintiff has asserted claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

III. Motion to Dismiss - Defendants ADA Hesse and DA's Office

Defendants ADA Hesse and DA's Office move to dismiss Plaintiff's cause of action filed against them pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for relief.

A. Official-capacity and state agency claims

"Absent an unmistakable waiver by the state of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress, the amendment provides

---

[5]In Martinez v. Aaron, 570 F.3d 317 (10th Cir. 1978), the Tenth Circuit Court of Appeals established guidelines for the filing of a special report by the appropriate prison or jail authorities to illuminate the factual background and subject matter of prisoners' civil rights complaints.

absolute immunity from suit in federal courts for states and their agencies." <u>Ramirez v. Oklahoma Dep't of Mental Health</u>, 41 F.3d 584, 588 (10th Cir. 1994).  Moreover, a lawsuit for monetary damages against a state official in his or her official capacity, which is deemed an action against the state, is generally barred by the Eleventh Amendment to the Constitution.  <u>See</u> <u>Pennhurst State School & Hosp. v. Halderman</u>, 465 U.S. 89, 101 (1984); <u>Johns v. Stewart</u>, 57 F.3d 1544, 1552 (10th Cir. 1995)("[T]he Eleventh Amendment bars a suit brought in federal court by the citizens of a state against the state or its agencies ... and applies whether the relief sought is legal or equitable.")(quotations and citations omitted). Plaintiff seeks only monetary damages in this action, and the State of Oklahoma has not expressly waived its Eleventh Amendment immunity to suit in federal court. <u>See</u> Okla. Stat. tit. 51, § 152.1(B)(expressing State's intent not to waive Eleventh Amendment immunity in Oklahoma Governmental Tort Claims Act).  Thus, Oklahoma's sovereign immunity bars Plaintiff's claims against Defendant ADA Hesse in his official capacity and against the DA's Office.  Thus, the official capacity claims against Defendant ADA Hesse and all of the claims against Defendant DA's office should be dismissed with prejudice for failure to state a claim for relief pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915A(b).

B. <u>Individual Capacity Claims - Prosecutorial Immunity</u>

Defendant ADA Hesse moves to dismiss Plaintiff's claims against him in his individual capacity on the ground of absolute prosecutorial immunity.  In a 42 U.S.C. § 1983 suit seeking damages, prosecutors are entitled to absolute immunity for their actions "intimately associated with the judicial phase of the criminal process." <u>Imbler v. Pachtman</u>,

424 U.S. 409, 430 (1976).  Absolute immunity extends to the preparation and filing of an information and application for an arrest warrant. <u>Kalina v. Fletcher</u>, 522 U.S. 118, 129 (1997).  Absolute immunity may even extend to "administrative or investigative activities when these functions are necessary so that a prosecutor may fulfill his function as an officer of the court." <u>Pfeiffer v. Hartford Fire Ins. Co.</u>, 929 F.2d 1484, 1490 (10th Cir. 1991). Applying this rule, the Tenth Circuit Court of Appeals has "found absolute prosecutorial immunity for (1) preparation and initiation of charges; (2) prosecuting civil and administrative enforcement proceedings, and (3) investigating and filing a commitment proceeding." <u>Mink v. Suthers</u>, 482 F.3d 1244, 1261 (10th Cir. 2007)(internal citations omitted). The Supreme Court recognized an exception to this absolute immunity rule for "those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigating officer rather than that of advocate." <u>Id.</u> at 430-431.

Plaintiff contends that Defendant ADA Hesse participated in a "conspiracy to cover-up police officers of Mustang Department's actions and allowing [sic] to proceed with prosecution, maliciously, against Plaintiff."  He alleges that ADA Hesse "shows deliberate indifference to epileptic Plaintiff by conspiracy to file charges, pursue charges/conviction upon Plaintiff."   All of Plaintiff's allegations in his Complaint against Defendant ADA Hesse, including his allegations of conspiracy, concern the prosecutor's initiation of criminal charges against Plaintiff and may also involve Defendant ADA Hesse's actions, according to additional allegations in Plaintiff's responsive pleading, in initiating emergency detention and/or involuntary commitment proceedings as to Plaintiff.  As such, these actions clearly

8

fall within the ambit of the prosecutor's absolute prosecutorial immunity from suit. Accordingly, Plaintiff's § 1983 claims against Defendant ADA Hesse in his individual capacity should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915A(b) on the basis of this Defendant's absolute prosecutorial immunity.

C. Malicious Prosecution

In a separate claim asserted in count one, Plaintiff alleges that Defendants ADA Hesse and DA's Office "maliciously seek prosecution of plaintiff due to epileptic seizure and accidental overdose of epileptic medication." Id. With respect to this claim, Plaintiff has not shown that any criminal charges filed against him in Canadian County have been terminated in his favor. Plaintiff therefore cannot state a claim for relief under 42 U.S.C. § 1983 with respect to his claim of malicious prosecution against Defendants ADA Hesse and DA's Office. See Novitsky v. City of Aurora, 491 F.3d 1244, 1258 (10th Cir. 2007)(listing elements of common law tort of malicious prosecution, as applicable to § 1983 claim, including termination of original action in favor of the plaintiff). See also Wilkins v. DeReyes, 528 F.3d 790, 801 n. 6 (10th Cir. 2008)(reiterating that favorable termination "remains an essential element of a § 1983 claim sounding in malicious prosecution"). These claims should be dismissed as to Defendants ADA Hesse and DA's Office pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915A(b). In the absence of an allegation of favorable termination of the criminal charges filed against Plaintiff in Canadian County, the Plaintiff's malicious prosecution claims, including the claims of conspiracy to maliciously prosecute the Plaintiff, should be dismissed as to all of the remaining Defendants pursuant to 28 U.S.C. § 1915A(b)

9

for failure to state a claim for relief under 42 U.S.C. § 1983.

D. Individual Capacity Claims - Personal Participation

To the extent Plaintiff's allegations in his Complaint can be construed to assert that Defendant ADA Hesse is liable for the actions of MPD Officers, Plaintiff has not alleged that Defendant ADA Hesse personally participated in the alleged unconstitutional use of excessive force and deliberate indifference to his serious medical needs stemming from his detention by MPD Officers and subsequent transport to and confinement in Defendant Hospital under an emergency order of detention.[6]  See Olson v. Stotts, 9 F.3d 1475, 1477 (10th Cir. 1993)(personal participation on the part of each defendant sued for damages in his or her individual capacity is required in a 42 U.S.C. §1983 action); accord, Bennett v. Passic, 545 F.2d 1260, 1262-1263 (10th Cir. 1976).  Accordingly, Plaintiff has not stated a claim against Defendant ADA Hesse with respect to Plaintiff's remaining allegations of constitutional deprivations, and Defendant ADA Hesse should be dismissed from the action as to these claims pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915A(b).

IV. Attempt to Amend Complaint in Responsive Pleading to Add Additional Claims

In Plaintiff's response to the Motion to Dismiss filed by Defendants ADA Hesse and DA's Office, Plaintiff for the first time alleges that (1) he was not provided a mental health

---

[6]In Plaintiff's responsive pleading, he clarifies his allegations in the Complaint somewhat by asserting that, according to police reports, one of the Defendant MPD Officers and an individual, Ms. Adams, filed an emergency order of detention concerning Plaintiff and that a petition for involuntary commitment of Plaintiff was filed and executed by a physician. Plaintiff's Response (Doc. # 41), at 2.

hearing under state law with respect to his emergency detention and involuntary commitment and (2) all Defendants violated an Oklahoma law providing that "charges cannot be filed upon epileptic in disabled condition, as Plaintiff was." Plaintiff's Response (Doc. #41), at 2. Plaintiff has not sought leave to amend his Complaint.  Moreover, even if Plaintiff was granted leave to amend his Complaint to assert these claims, Plaintiff has failed to state a claim for relief under 42 U.S.C. § 1983 with these allegations. See Jones v. City and County of Denver., 854 F.2d 1206, 1209 (10th Cir. 1988)("Section 1983 does not ... provide a basis for redressing violations of state law, but only for those violations of *federal* law done under color of state law.")(emphasis in original).  Accordingly, these additional claims of violations of state law set forth in Plaintiff's responsive pleading should be dismissed under 28 U.S.C. § 1915A(b) for failure to state a claim for relief.

V.  Americans with Disabilities Act Claims

The Americans with Disabilities Act prohibits certain employers from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. §§ 12112(a), 12111(2), (5), (7).  Plaintiff has not alleged discrimination in an employment or potential employment context.  Therefore, Plaintiff has failed to state a claim for relief against any Defendant under the Americans with Disabilities Act, and Plaintiff's claim in count one of a violation of the Americans with Disabilities Act should be dismissed pursuant to 28 U.S.C. § 1915A(b) as to all Defendants

11

for failure to state a claim for relief.

VI. Motion to Dismiss/Motion for Summary Judgment - Defendant Hospital

In describing Defendant Hospital in his Complaint, Plaintiff alleges that Defendant Hospital "allowed Mustang Police officers to place plaintiff in metal handcuffs and ankle restraints and leave plaintiff restrained for 3 days consecutively, in metal restraints" and "showed a deliberate indifference to plaintiff by allowing metal restraints be placed on epileptic plaintiff, and be kept on plaintiff, while he had seizures, for 3 days consecutively." Complaint, at 2 (back of page 2). In count three of the Complaint, Plaintiff alleges that Defendant Hospital violated his Fourteenth Amendment rights because "Hospital Personell [sic] refused to place plaintiff in leather or cloth restraints, while in I.C.U., suffering epileptic seizures." Complaint, at 4.

Defendant Hospital moves to dismiss the cause of action filed by Plaintiff against it or in the alternative moves for summary judgment. Defendant Hospital contends that Plaintiff has failed to state a claim for relief against Defendant Hospital because he has failed to allege the requisite concerted action between the state Defendants and the private entity. Assuming that Plaintiff has established the requisite concerted action, Defendant Hospital contends that the undisputed facts show Defendant Hospital was not deliberately indifferent to Plaintiff's medical needs. Because both parties rely on evidentiary documents outside of the pleadings, Defendant Hospital's dispositive motion is considered as a motion for summary judgment pursuant to Fed. R. Civ. P. 56.

To establish a claim under 42 U.S.C. § 1983, Plaintiff must show that Defendant

12

Hospital was a state actor who violated his rights under the Constitution or federal law. Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 155 (1978). See Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982)("In cases under § 1983, 'under color' of law has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment."). "[I]n order to hold a private individual liable under § 1983, it must be shown that the private person was jointly engaged with state officials in the challenged action, or has obtained significant aid from state officials, or that the private individual's conduct is in some other way chargeable to the State." Lee v. Town of Estes Park, 820 F.2d 1112, 1114 (10th Cir. 1987). "In order to establish state action, a plaintiff must demonstrate that the alleged deprivation of constitutional rights was 'caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.'" Gallagher v. Neil Young Freedom Concert, 49 F.3d 1442, 1447 (10th Cir. 1995)(quoting Lugar v. Edmondson, 457 U.S. 922, 937 (1982)). Additionally, "the party charged with the deprivation must be a person who may fairly be said to be a state actor." Lugar, 457 U.S. at 937.

Plaintiff alleges in his Complaint that Defendant Hospital acted "under color of law." Complaint, at 2 (back of page 2). However, Plaintiff does not provide any factual support for this conclusory allegation. The parties' pleadings show it is not disputed that MPD Officers responded to a 911 call from Plaintiff's wife on April 4, 2006. The officers were responding due to Plaintiff's wife's statement to a 911 operator that Plaintiff was attempting suicide by deliberately overdosing on his epileptic medication, Phenobarbital. The officers

restrained Plaintiff by placing him in handcuffs and ankle restraints. Plaintiff was transported to Defendant Hospital in restraints by ambulance. Plaintiff was noted to be "combative" by the ambulance personnel. Plaintiff threatened to kill various staff members at Defendant Hospital, and an attending physician at Defendant Hospital directed that Plaintiff be restrained because he was a danger to himself and others.[7]

In response to Defendant Hospital's motion, Plaintiff relies on a police report authored by Defendant MPD Officer Collins which appears in the Special Report. Special Report (Doc. # 46), Att. 7. Defendant Collins states in his report that Plaintiff actively resisted the MPD Officers' attempts to transport Plaintiff for treatment and that handcuffs and ankle chains were placed on Plaintiff prior to his transport to Defendant Hospital. Defendant Collins states in the same report that after Plaintiff arrived at the hospital he "was still adamant on taking his life and continually went from extreme anger to quiet sobbing" and stated "he was at the end of his rope" and "he was ready to die." Special Report, Att. 7. Defendant Collins states that the doctor on duty at Defendant Hospital advised that Plaintiff was being transferred to Defendant Hospital's intensive care unit and would remain there until he was stabilized and evaluated by medical personnel. After Plaintiff was transferred

_____

[7]In response to Defendant Hospital's statement of undisputed facts concerning Plaintiff's behavior upon his entry to Defendant Hospital, Plaintiff states that he was "compliant" until he perceived a staff member had threatened him, and he admits that he then "attempted to leave the hospital...." He states that Defendant Hospital "misconstrues the facts and actions of Plaintiff," but Plaintiff does not specifically deny Defendant Hospital's statement of undisputed facts concerning Plaintiff's behavior during the course of treatment. Special Report (Doc. # 46), Att. 7. Plaintiff relies on Dr. Qureshi's statement which appears in the Special Report, Att. 11, at 75; Att. 13, in which Dr. Qureshi states that he directed that Plaintiff be placed in 4 point restraints as he "threatened to kill a nurse."

to Defendant Hospital's intensive care unit for treatment, Defendant Collins states that he handcuffed Plaintiff to the bed and did not remove the leg shackles, that Plaintiff then went to sleep, and that Officer Collins stayed with Plaintiff until another MPD Officer arrived to stay with Plaintiff.

Although Plaintiff asserts in a "Supplemental Objection to Defendant ... Hospital Motion for Summary Judgment" that he was "compliant" after he was transported to Defendant Hospital, he also admits in this pleading that when he was transported to Defendant Hospital he was "suicidal and manic" from overdosing on Phenobarbitol and that he tore out his intravenous and monitor lines and attempted to leave the hospital. (Doc. # 62). In his responsive pleadings, Plaintiff relies on the report of the attending physician in the Defendant Hospital's intensive care unit, dated April 5, 2006.  In this report, the physician, Dr. Qureshi, states that Plaintiff "overdosed on 30 phenolbarbitol after arguing with his wife and threatening suicide.  While in ICU, he had to be put in 4-point restraints and threatened to kill a nurse, according to ICU staff.  He is a danger to himself and others.  He lacks the insight and judgement to make appropriate decisions for his safety, treatment, and well-being." Special Report, Att. 13.  The physician described Plaintiff as "depressed and irritable" and recommended inpatient mental health treatment for Plaintiff. Id. Plaintiff also refers in his responsive pleading to a report generated at Defendant Hospital, dated April 5, 2006.  In this report, Plaintiff was described as "verbally abusive and violent.  It took 5 guys to hold him down and then he was placed in 4 point leather restraints.  He did threaten to kill a nurse this morning." Special Report, Att. 12.

Under Oklahoma's Mental Health Law, Okla. Stat. tit. 43A, §§ 1-110 (B), 5-207, law enforcement officers have the discretionary authority to take an individual into protective custody, based on either their reasonable belief that the individual requires mental health treatment or based on the statement of a third party that the individual is in need of emergency detention, and law enforcement has the authority to transport the individual to a medical facility for evaluation for the purpose of mental health treatment. Once a licenced mental health professional determines that an individual is a person requiring treatment such that emergency action is necessary, the hospital or facility may detain the individual in emergency detention for up to 72 hours. Okla. Stat. tit. 43A, § 5-208(B).

The undisputed facts show that Defendant MPD Officer Collins and Defendant Hospital both determined it was necessary to restrain Plaintiff after he was detained at the hospital for medical treatment and a mental health evaluation and that Plaintiff continued to be restrained during the course of his treatment at Defendant Hospital by restraints placed on Plaintiff by MPD Officer Collins. Based on these undisputed facts, Plaintiff has shown the necessary state action on the part of Defendant Hospital. The undisputed facts show concerted action between MPD Officer Collins and Defendant Hospital with respect to the issue of restraints, and this is sufficient to show state action on the part of Defendant Hospital. Gallagher, 49 F.3d at 1454 ("[S]tate action may be found if a state actor has participated in or influenced the challenged decision or action."). In Gallagher, the Tenth Circuit Court of Appeals noted that "[g]enerally, in instances in which courts have found state action based on concerted action between police officers and private parties, the police

16

have substantially assisted in the allegedly wrongful conduct." Id. at 1455.  Here, the allegedly wrongful conduct that forms Plaintiff's claim against Defendant Hospital and a portion of Plaintiff's claims against Defendant MPD Officers is the maintenance of arm and leg restraints on Plaintiff during his detention at Defendant Hospital. The undisputed circumstances here show that Defendant Collins actively and substantially assisted in the placement and maintenance of restraints on Plaintiff at Defendant Hospital. Thus, Defendant Hospital is a state actor.

With respect to Plaintiff's claim against Defendant Hospital of deliberate indifference to his serious medical needs, Plaintiff asserts in his Complaint that the restraints placed upon him by Defendant Collins were not removed during his detention at Defendant Hospital.  He alleges he had epileptic seizures during this time period, and that Defendant Hospital's staff refused to replace the metal restraints with cloth or leather restraints.  Plaintiff alleges in his responsive pleading that he was transported by MPD Officers to a different mental health facility on April 6, 2006.

Plaintiff relies on Youngberg v. Romeo, 457 U.S. 307 (1982), in which the Supreme Court found that institutionalized persons who are 'wholly dependent on the state" have a conditional right to freedom from bodily restraint. Id. at 316-317, 320.  Plaintiff, however, was a detainee placed under observation at Defendant Hospital pending commitment proceedings, and in this context the Tenth Circuit Court of Appeals has recognized that the state may not owe as great a duty of care. Sawyer v. County of Creek, 908 F.2d 663, 667 (10th Cir. 1990).  In order to establish his claim, Plaintiff must show that Defendant Hospital

exhibited deliberate indifference to his serious medical needs. Id.

Defendant Hospital seeks summary judgment with respect to this claim.  However, Defendant Hospital only generally refers to the standard established in the Supreme Court for inmates' claims of deliberate indifference to their serious medical or safety needs, Farmer v. Brennan, 511 U.S. 825 (1994), and presents no cogent argument supporting its assertion that the undisputed facts entitle it to judgment as a matter of law in this case.  Therefore, Defendant Hospital's Motion for Summary Judgment with respect to Plaintiff's claim against it of deliberate indifference to his serious medical needs should be denied.  Defendant Hospital should, however, be given the opportunity to seek summary judgment in another motion with respect to this claim.


RECOMMENDATION

Based on the foregoing findings, it is recommended that (1) Defendants ADA Hesse and DA's Office's Motion to Dismiss (Doc. # 38) be granted, and (A) the official capacity claims against Defendant ADA Hesse and all of the claims against Defendant DA's office should be dismissed with prejudice for failure to state a claim for relief pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915A(b), (B) Plaintiff's § 1983 claims against Defendant ADA Hesse in his individual capacity should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915A(b) on the basis of this Defendant's absolute prosecutorial immunity, (C) the Plaintiff's malicious prosecution and conspiracy claims should be dismissed as to Defendants ADA Hesse and DA's Office pursuant to Fed. R. Civ. P. 12(b)(6)

18

and 28 U.S.C. § 1915A(b), and (D) Defendant ADA Hesse should be dismissed from the action as to the Plaintiff's remaining claims pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915A(b) for failure to state a claim for relief.  Further, it is recommended that Plaintiff's malicious prosecution claims, including the claims of conspiracy to maliciously prosecute the Plaintiff, should be dismissed as to all of the remaining Defendants pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim for relief under 42 U.S.C. § 1983,  that Plaintiff's claim in count one of a violation of the Americans with Disabilities Act should be dismissed pursuant to 28 U.S.C. § 1915A(b) as to all Defendants for failure to state a claim for relief, and that Plaintiff's claims of violations of state law set forth in Plaintiff's responsive pleading should be dismissed under 28 U.S.C. § 1915A(b) for failure to state a claim for relief.   It is recommended that Defendant Hospital's Motion for Summary Judgment (Doc. # 47) be denied.

Plaintiff is notified that a dismissal of this cause of action pursuant to 28 U.S.C. §1915A(b) may constitute one "strike" pursuant to 28 U.S.C. §1915(g) upon affirmance or waiver of his  opportunity to appeal.  The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court by  September 18th   , 2008, in accordance with 28 U.S.C. § 636 and LCvR 72.1.  The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation partially disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this _____29th_____ day of _____August_____, 2008.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE