IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

CHAD JEREMY ADAMS, )
)
Plaintiff, )
)
) CIV-07-1113-D
v. )
)
MUSTANG POLICE DEPARTMENT, )
et al., )
)
Defendants. )

THIRD SUPPLEMENTAL REPORT AND RECOMMENDATION

Before the undersigned[1] in this 42 U.S.C. § 1983 action filed by an Oklahoma prisoner is the second Motion for Summary Judgment filed by Defendant Integris Canadian Valley Regional Hospital ("Hospital"). (Doc. # 98). Plaintiff has responded to the Motion. See Plaintiff's Supplemental Objection to Defendant Integris Hospitals' [sic] Motion for Summary Judgment and Brief in Support ("Plaintiff's Response"). Thus, the Motion is at issue. For the following reasons, it is recommended that Defendant Hospital's second Motion for Summary Judgment be granted.

In his Complaint filed October 2, 2007, Plaintiff sought damages for alleged

[1]The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).

constitutional deprivations and a violation of the Americans with Disabilities Act ("ADA") stemming from his encounter on April 4, 2006, with several officers of the City of Mustang Police Department named as Defendants ("MPD Officers"). Plaintiff's encounter with MPD Officers resulted in his detention and transport to Defendant Hospital for medical treatment and a mental health evaluation and also resulted in criminal charges being filed against Plaintiff in the District Court of Canadian County, Oklahoma.

Previously, Defendants Canadian County District Attorney's Office and Paul Hesse, an Assistant District Attorney for Canadian County, were dismissed from the cause of action. See Order entered by United States District Judge DeGiusti on September 29, 2008. Additionally, Plaintiff's claims alleging malicious prosecution and claims under the ADA were dismissed as to all Defendants. See id. In the September 29, 2008 Order, District Judge DeGiusti concurred with the Report and Recommendation entered by the undersigned recommending that Defendant Hospital's first Motion for Summary Judgment be denied without prejudice to another summary judgment motion. In an Order entered October 22, 2008, Defendant Canadian County's Motion for Summary Judgment was granted and judgment was entered in favor of Defendant Canadian County. The undersigned has also recommended in a Second Supplemental Report and Recommendation entered October 6, 2008, that the Motion for Summary Judgment filed by Defendants MPD Officers and the Motion for Summary Judgment filed by Defendant City of Mustang be granted. Plaintiff has filed an objection to the Second Supplemental Report and Recommendation.

Defendant Hospital contends in its second Motion for Summary Judgment that the

undisputed facts fail to create an issue for trial with respect to Plaintiff's claim against it. In compliance with the Court's local procedural rule, LCvR 56.1(b), Defendant Hospital sets forth in its Motion a statement of material, undisputed facts. In response to Defendant Hospital's dispositive Motion, Plaintiff has set forth a list of "material facts." Plaintiff's Response, at 2-3. As support for Plaintiff's list of "material facts," Plaintiff generally relies upon documents contained in the Special Report[2] and on Plaintiff's averments in an affidavit submitted as an attachment to his responsive pleading.[3] Plaintiff's Response, at 2. However, Plaintiff's list of "material facts" does not comply with the requirements of Local Civil Rule 56.1(c) because the list does not "contain a concise statement of material facts to which the party asserts genuine issues of fact exist," "refer with particularity to those portions of the record upon which the opposing party relies, " or "state the number of the movant's facts that is disputed." LCvR 56.1(c). Plaintiff was expressly and fully advised of the requirements of this Court's procedural rules in responding to Defendant Hospital's second Motion for Summary Judgment. See Doc. # 99 (Order entered October 21, 2008). Therefore, the material facts set forth in Defendant Hospital's brief in support of its second Motion for Summary Judgment that are not specifically controverted by Plaintiff in his responsive pleading are deemed admitted for the purpose of resolving the instant Motion. LCvR 56.1(c).

---

[2]In Martinez v. Aaron, 570 F.3d 317 (10th Cir. 1978), the Tenth Circuit Court of Appeals established guidelines for the filing of a special report by the appropriate prison or jail authorities elucidating the factual background and subject matter of prisoners' civil rights complaints.

[3]Plaintiff's verified Complaint is considered an affidavit for the purpose of resolving Defendant Hospital's Motion for Summary Judgment. Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991).

I. Standard of Review

In resolving Defendant Hospital's second Motion for Summary Judgment, the undersigned considers the entire summary judgment record, considers the facts in the light most favorable to Plaintiff, as the nonmoving party, and draws all reasonable inferences in his favor. Summary judgment may be granted only where the pleadings and any supporting documentary materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court reviews the evidence and inferences drawn from the record in the light most favorable to the nonmoving party. Jiron v. City of Lakewood, 392 F.3d 410, 414 (10th Cir. 2004). A dispute is "genuine" if a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are "facts which might affect the outcome of the suit under the governing law." Id. Additionally, if the moving party demonstrates an absence of evidence regarding an issue on which the nonmoving party will bear the burden of proof at trial, the nonmoving party can defeat summary judgment only by designating with evidence outside of the pleadings "specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

"To survive summary judgment, 'nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient.'" Murray v. City of Sapulpa, 45 F.3d 1417, 1422 (10th Cir. 1995)(quoting Hall, 935 F.2d at 1111).

II. Plaintiff's Claim against Defendant Hospital

In Plaintiff's Complaint, Plaintiff asserts that Defendant Hospital is liable to him under the Fourth Amendment because Defendant Hospital "allow[ed] police to place metal restraints upon plaintiff, while in I.C.U., and leave restraints upon plaintiff for 3 day[sic], consectutively [sic]." Complaint, at 2. Plaintiff further alleges, without reference to a constitutional basis, that Defendant Hospital "showed a deliberate indifference to Plaintiff by allowing metal restraints be placed on epileptic plaintiff, and be kept on plaintiff, while he had seizures, for 3 days consecutively." Complaint, at 2 (back of page). In count three of the Complaint, Plaintiff alleges that his Fourteenth Amendment rights were violated because he "was kept in metal restraints while in I.C.U. without any criminal charges filed upon him, for 3 days, consecutively" and "Hospital personell [sic] refused to place plaintiff in leather or cloth restraints, while in I.C.U., suffering epileptic seizures." Complaint, at 4. In his Complaint, Plaintiff seeks only monetary damages in the aggregate sum of twenty million dollars.

III. Undisputed Facts

It is not disputed in this matter that MPD Officers responded to a 911 call from Plaintiff's wife on April 4, 2006. The officers were responding due to Plaintiff's wife's statement to a 911 operator that Plaintiff was attempting suicide by deliberately overdosing on his epileptic medication, Phenobarbital. The officers restrained Plaintiff by placing him in handcuffs and ankle restraints. Plaintiff was transported to Defendant Hospital in restraints by ambulance. Rescue personnel noted that Plaintiff was "combative" and that

Plaintiff had a "ETOH/DRUG OD - life threatening" medical condition. Rescue personnel also noted that Plaintiff's demeanor was "Abnormal: aggressive, agitated, suspect drug/alcohol use."

After Plaintiff was transported to Defendant Hospital, Plaintiff continued to express his desire to kill himself and threatened to kill staff members at Defendant Hospital. Hospital staff removed two Taser darts from Plaintiff's midsection and noted that Plaintiff had a superficial cut to his left wrist and had ingested a potentially lethal amount of Phenobarbitol. Defendant Hospital's emergency room physician examined Plaintiff and recorded in an ER report that Plaintiff had a long history of depression, increasing anger and hostility, and multiple suicide attempts. "Suicide precautions" were ordered, and Plaintiff was admitted to the hospital under the care of a psychiatrist, Dr. Farhan Qureshi, M.D.

A licensed mental health professional at the Hospital completed a written mental health assessment and "Licensed Mental Health Professional's Statement," documenting that Plaintiff attempted suicide by overdosing on 30 Phenobarbitol tablets after arguing with his wife and threatening suicide, that he was abusive to the Hospital's staff and "threatened to kill a nurse," and that he was placed in restraints. The licensed mental health professional found Plaintiff to be a danger to himself and others. Special Report, Att. 11, at 75. While in the intensive care unit of the Hospital, Plaintiff yelled, kicked, screamed, and attempted to hit and kick at others. He pulled an intravenous line out of his arm. Dr. Qureshi ordered "life threatening situations," or suicide, precautions and directed that restraints, specifically handcuffs on his hands and feet, be maintained on Plaintiff based on a written finding that

alternatives to restraints were unsuccessful. With respect to the order for restraints, Dr. Qureshi check-marked a form indicating that Plaintiff (1) was confused or disoriented or otherwise unable to follow instructions consistently, (2) was thrashing his extremities in a manner and setting that could result in injury, and (3) was exhibiting aggressive or violent behavior in a manner and to the degree that there was significant potential for injury to himself or others. Special Report, Att. 11, at 29-30.

Randelyne J. Peterson, M.Ed., LPC, of the Mobile Assessment Team, completed a Petition for Involuntary Commitment for Plaintiff, in which the mental health professional stated that Plaintiff was a risk of harm to himself and/or others based on his suicide attempt and homicidal ideation. Peterson also stated that Plaintiff was not competent to consent to or refuse treatment. Plaintiff's wife completed a third party affidavit at the Hospital in support of an Emergency Order of Detention ("EOD"). In the affidavit, Ms. Adams stated that Plaintiff told her he "took all of his remaining Phenobarbitol and had cut his wrists...." She also noted that Plaintiff "has mentioned wanting to 'blow his head off' several times before in the last 2 - 3 weeks." After receiving treatment for his drug overdose, and after he had become sufficiently detoxified, Plaintiff was transferred from the Hospital to the Deaconess Bethany Adult Mental Health Unit on April 5, 2006, at 3:44 p.m., less than 24 hours after he arrived at the Hospital. Plaintiff was released from that mental health facility to outpatient counseling on April 6, 2006, at 4:00 p.m.

IV. Appropriate Standard

Although Defendant Hospital has assumed that Plaintiff's claim against it arises under

the Eighth Amendment's "deliberate indifference to his serious medical needs" standard, Plaintiff has asserted in the Complaint that his claim against Defendant Hospital arises under the Fourth Amendment and the Fourteenth Amendment. Plaintiff has also alleged that Defendant Hospital exhibited "deliberate indifference" to Plaintiff by maintaining restraints upon him. Thus, the predominant issue is the determination of the proper standard governing Plaintiff's claim against Defendant Hospital.

The Sixth Circuit Court of Appeals has stated that the Fourth Amendment "applies in the civil setting to seizures of individuals for psychiatric evaluations or involuntary confinement." Lanman v. Hinson, 529 F.3d 673, 680 (6th Cir. 2008)(citing Monday v. Oullette, 118 F.3d 1099, 1102-1104 (6th Cir. 1997)). However, the court in Lanman also recognized that "[t]he Fourteenth Amendment is the source of a pretrial detainee's excessive force claim because when a plaintiff is not in a situation where his rights are governed by the particular provisions of the Fourth or Eighth Amendments, the more generally applicable Due Process Clause of the Fourteenth Amendment provides the individual with protection against physical abuse by officials." Id. at 680-681. The Fourteenth Amendment standard was found to be applicable in the circumstances in Lanman because the plaintiff "was not seized within the meaning of the Fourth Amendment." Id. Thus, the court found the appropriate source for the plaintiff's excessive force claim was the Fourteenth Amendment's right, recognized in Youngberg v. Romero, 457 U.S. 307 (1982), "to freedom from undue bodily restraint in the course of his treatment." Id. at 681.

In his Complaint, Plaintiff does not challenge either the involuntary nature of his

detention or the actual medical treatment he received at Defendant Hospital between April 4, 2006 and April 5, 2006. Rather, Plaintiff's Complaint challenges the use and maintenance of metal restraints on his wrists and ankles at Defendant Hospital despite his request that the restraints be removed or replaced with leather or cloth restraints. It is clear from the undisputed facts that Plaintiff was seized within the meaning of the Fourth Amendment when law enforcement officers restrained his ankles and wrists and had him transported by ambulance to Defendant Hospital for emergency medical treatment and a mental health evaluation.[4]

Preliminarily, to the extent Plaintiff seeks to enlarge upon this claim in his response to Defendant Hospital's second Motion for Summary Judgment, Plaintiff's attempt to amend the Complaint in a responsive pleading is not well taken. Plaintiff's new claims asserted for the first time in his responsive pleading, i.e., challenging the adequacy of the medical treatment he received at Defendant Hospital and alleging that Defendant Hospital violated state law, will not be considered herein.

Moreover, even if Plaintiff requested leave to amend the Complaint, his new claims set forth in his responsive pleading fail to state a claim for relief against Defendant Hospital under 42 U.S.C. § 1983, and leave to amend the Complaint to add these new claims should

---

[4]In the Second Supplemental Report and Recommendation entered October 6, 2008, the undersigned entered findings and a recommendation with respect to the Motion for Summary Judgment filed by the individual MPD Officers named as Defendants. In recommending a resolution of that Motion, the undersigned analyzed the claims of Plaintiff against the individual MPD Officers under the Fourth Amendment's standard governing excessive force claims.

be denied. In the Report and Recommendation entered herein on August 29, 2008, the undersigned found that Plaintiff had shown the necessary state action on the part of Defendant Hospital based on undisputed facts showing "concerted action between MPD Officer Collins and Defendant Hospital with respect to the issue of restraints... Here, the allegedly wrongful conduct that forms Plaintiff's claim against Defendant Hospital ... is the maintenance of arm and leg restraints on Plaintiff during his detention at Defendant Hospital. The undisputed circumstances here show that Defendant Collins actively and substantially assisted in the placement and maintenance of restraints on Plaintiff at Defendant Hospital. Thus, Defendant Hospital is a state actor." Report and Recommendation (Doc. # 87, at 16-17). Plaintiff has not shown the requisite state action on the part of Defendant Hospital for its actions beyond those connected with the issue of metal restraints. See Pino v. Higgs, 75 F.3d 1461, 1466 (10th Cir. 1996)(holding private physician did not act under color of state law when he admitted patient for mental health treatment under state's involuntary commitment statute). In the Order entered September 29, 2008, District Judge DeGiusti found that "Plaintiff's § 1983 claim against Defendant Hospital is not that he received improper medical treatment for his drug overdose and suicide attempt but that he was restrained for three days in 4-point metal restraints." (Doc. # 95).

The undisputed facts show Plaintiff was transported to Defendant Hospital for involuntary mental health treatment under Oklahoma's Mental Health Law, Okla. Stat. tit. 43A, §§ 1-110(B), 5-207, which gives law enforcement officers the discretionary authority to take an individual into protective custody based on a reasonable belief that the individual

requires mental health treatment and to transport the individual to a medical facility for evaluation for the purpose of mental health treatment, and also for medical treatment for his TASER-related injuries and drug overdose. As the undersigned previously found in the Report and Recommendation, it is not disputed that Defendant MPD Officer Collins and Defendant Hospital both determined it was necessary to restrain Plaintiff after he was detained by law enforcement officers and transported to the hospital for medical treatment and a mental health evaluation and that Plaintiff continued to be restrained during the course of his treatment at Defendant Hospital by restraints placed on Plaintiff by MPD Officer Collins. See Report and Recommendation (Doc. # 87), at 16. The undersigned previously found in the Second Supplemental Report and Recommendation that Plaintiff's allegations that the failure to remove the wrist and ankle restraints after he was transported to Defendant Hospital were not sufficient, as a matter of law, to show excessive force where the undisputed facts showed Plaintiff continued to be aggressive toward Hospital staff and to resist being treated by Hospital staff for his drug overdose/attempted suicide. Significant to this finding was the absence of any admissible evidence of actual or lasting physical or psychological injury from the maintenance of wrist and ankle restraints on Plaintiff during his stay at the Hospital. See Second Supplemental Report and Recommendation (Doc. # 96), at 23-24.

In Pino, the Tenth Circuit Court of Appeals held that a plaintiff's claim that she was unreasonably detained and transported by law enforcement officers for emergency mental health treatment "must be brought under the Fourth Amendment." Pino, 75 F.3d at 1469.

The court reasoned that "[t]o the extent that an involuntary seizure of a person for an emergency mental health evaluation mirrors a criminal arrest, the Fourth Amendment's protection against unreasonable searches and seizures more specifically applies to [that individual's] situation than the Fourteenth Amendment's general substantive and procedural due process guarantees." Id. Nevertheless, the court analyzed the plaintiff's claim under the Fourteenth Amendment as well and concluded that under the circumstances "procedural due process affords [the plaintiff] no more protection than her right to be free from unreasonable seizure, and because she had not established the law enforcement officers acted unreasonably in seizing her she had not established they violated her procedural due process rights as well. Id. In United States v. Villagrana-Flores, 467 F.3d 1269, 1273 (10th Cir. 2006), cert. denied, 127 S.Ct. 1021 (2007), the Tenth Circuit reiterated that "[t]he Fourth Amendment is not confined to the criminal area but applies whenever government authorities take an individual into custody against his will." The Fourth Amendment provides the most analogous standard for evaluating Plaintiff's claim. Under the standard governing excessive force claims in the context of a search and seizure of an individual, the Court must carefully balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake [giving] careful attention to the facts and circumstances of [the] particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the

scene, rather than with the 20/20 vision of hindsight." Dixon v. Richer, 922 F.2d 1456, 1462 (10th Cir. 1991)(quotations omitted). See Graham v. Connor, 490 U.S. 386, 395 (1989)(holding "*all* claims that law enforcement officers have used excessive force - deadly or not- in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach").

Plaintiff states in his responsive pleading that the "material facts" show he "repeatedly screamed, yelled, and cried in pain due to the metal restraints upon him and each and every time Plaintiff voiced this pain, Integris Hospital nurses and doctors administered medication(s). Thus, Integris Hospital employees are [sic] aware that Plaintiff is in pain and suffering." Plaintiff further states that the "material facts" show he "suffered numerous, repeated, epileptic grand-mal seizures while being restrained in metal (4) four-point restraints, while at Integris Hospital." Plaintiff's Response, at 3.

Plaintiff has not specifically controverted Defendant Hospital's statement of material facts, including the statements that Plaintiff was combative with Defendant Hospital's staff, he had threatened to kill a nurse, that he had previously made multiple suicide attempts and exhibited increasing anger and hostility, he attempted to hit and kick at others and had pulled an intravenous line out of his arm, that he was found to be abusive to the Hospital's staff and also found to be a danger to himself and others, that Plaintiff had yelled, kicked and screamed after he was placed in an intensive care unit at the hospital, that his treating psychiatrist at Defendant Hospital had ordered the use of metal restraints based upon findings

that alternatives to restraints were unsuccessful, and that the mental health professional who evaluated Plaintiff found Plaintiff was a risk of harm to himself and/or others based on his suicide attempt and homicidal ideation.

In an unpublished decision involving the involuntary detention of a mentally ill individual and a claim of excessive force connected with that detention, the Tenth Circuit Court of Appeals in Gianetti v. City of Stillwater, 216 Fed.Appx. 756, 2007 WL 441887 (10th Cir. Feb. 12, 2007)(unpublished op.), found that law enforcement officers did not use excessive force "given the 'tense, uncertain, and rapidly evolving' situation presented by [the plaintiff's] behavior." Id. at 765 (quoting Graham, 490 U.S. at 396-397). In reaching this finding, the circuit court recognized that "a detainee's mental health must be taken into account when considering the officers' use of force ... under Graham." Id. at 764. In that case, the facts showed the plaintiff exhibited irrational behavior and was perspiring heavily, which an officer stated indicated drug use, that the plaintiff struggled with and kicked the officers, and that the plaintiff indicated to the officers she was taking antipsychotic medication. Id.

Viewed in the light most favorable to the Plaintiff, the undisputed facts in this case show that Defendant Hospital did not employ excessive force under the Graham standard by maintaining metal restraints[5] upon Plaintiff during his approximately 19-hour stay at

[5] Defendant Hospital's records indicate that Plaintiff was placed in 4-point leather, not metal, restraints. Special Report, Att. 11, at 79. However, for the purpose of resolving the instant Motion, the truth of Plaintiff's factual assertion is assumed.

Defendant Hospital. The circumstances at the time of the use of the restraints showed that Defendant Hospital's staff knew Plaintiff had ingested a large amount of Phenobarbitol, an anticonvulsant medication, in a suicide attempt, that he had made numerous previous suicide attempts, that he was in restraints when he arrived by ambulance with law enforcement officers in attendance, that he exhibited hostility, anger, and violent behavior toward hospital staff, even threatening to kill a nurse, that he exhibited violent and harmful behavior toward himself, including pulling out an intravenous line placed in his arm in order to administer medication to treat his potentially lethal drug overdose, and that Plaintiff continued to act aggressively after he was transferred to the Hospital's intensive care unit, including kicking at others. Defendant Hospital's action in maintaining the restraints placed on Plaintiff by MPD Officer Collins was reasonable under the undisputed factual circumstances. Plaintiff has relied upon and not challenged the documentary evidence appearing in the Special Report, and he has particularly relied upon Defendant Hospital's records of his treatment and mental health evaluation. Those records show that Defendant Hospital's staff reported Plaintiff did not exhibit swelling in his extremities when he arrived and that he did not exhibit swelling in his extremities when the presence or absence of "edema," or swelling, was assessed by Hospital staff on two occasions during his stay at Defendant Hospital. Special Report, Att. 11, at 21-22, 58, 66.

Because Plaintiff has not established an issue of fact for trial on his Fourth Amendment excessive force claim, Plaintiff has not established an issue of fact for trial with respect to his Fourteenth Amendment procedural due process claim. See Pino, 75 F.3d at

1469 (in context of involuntary seizure of person for emergency mental health evaluation, procedural due process affords individual no more protection than her right to be free from unreasonable seizure; holding that "[s]ince Appellant has not established that Appellees acted unreasonably in seizing her, it follows that she has not established that they violated her procedural due process rights"). Moreover, Plaintiff has no substantive due process claim because his "claim that [he] was unreasonably detained and transported must be brought under the Fourth Amendment." Id. Consequently, Defendant Hospital is entitled to judgment as a matter of law.

RECOMMENDATION

Based on the foregoing findings, it is recommended that Defendant Hospital's second Motion for Summary Judgment (Doc. # 98) be GRANTED and that judgment issue in favor of Defendant Hospital and against the Plaintiff. The parties are advised of their respective right to file an objection to this Third Supplemental Report and Recommendation with the Clerk of this Court by December 29th, 2008, in accordance with 28 U.S.C. § 636 and LCvR 72.1. The failure to timely object to this Third Supplemental Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Third Supplemental Report and Recommendation disposes of all issues referred

to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this 8th day of December, 2008.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE